UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRIAN SCHWEGEL, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | |
| APACHE CORPORATION, JOHN J. CHRISTMANN IV, TIMOTHY J. SULLIVAN, STEPHEN J. RINEY, and STEVEN KEENAN, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Brian Schwegel ("Plaintiff") alleges the following based upon personal knowledge as to allegations specifically pertaining to Plaintiff and, as to all other matters, upon the investigation of counsel, which included, without limitation: (i) reviewing and analyzing public filings made by Apache Corporation ("Apache" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (ii) reviewing and analyzing press releases and other publications disseminated by Defendants (defined below) and other parties; (iii) reviewing and analyzing news articles, shareholder communications, conference calls, and postings on Apache's website about the Company's public statements; and (iv) reviewing and analyzing other publicly available information about the Company.

## NATURE OF THE ACTION

1.      This is a federal securities class action against Apache and certain of its officers for violations of the federal securities laws.  Plaintiff brings this action on behalf of all persons or entities that purchased or otherwise acquired Apache common stock from September 7, 2016 through March 13, 2020, inclusive (the "Class Period"), seeking remedies under the Securities

Exchange Act of 1934 (the "Exchange Act").  The action alleges that Defendants engaged in a fraudulent scheme to artificially inflate the Company's stock price in violation of Sections 10(b) and 20(a) of the Exchange Act.

2.      Apache is an independent energy company that explores for, develops, and produces natural gas, crude oil, and natural gas liquids.  Apache currently has exploration and production operations in three geographic areas: the U.S., Egypt, and offshore United Kingdom in the North Sea, and is developing a purported new find in offshore Suriname.  Historically, the U.S. has represented nearly 60% of the Company's production and 70% of its estimated year-end proved reserves.  At all relevant times, one of the Company's purported key "core growth areas" was the Permian region in West Texas and New Mexico.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's operations and financial health, including the viability and profitability of a purported large oil-and-gas resource play in the Permian Basin called Alpine High.  Specifically, Defendants made false and misleading statements and/or failed to disclose that: (i) Apache intentionally used unrealistic assumptions regarding the amount and composition of available oil and gas in Alpine High; (ii) Apache did not have the proper infrastructure in place to safely and/or economically drill and/or transport those resources even if they existed in the amounts purported; (iii) these misleading statements and omissions artificially inflated the value of the Company's operations in the Permian Basin; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

4.      On April 23, 2019, before financial markets opened, Apache announced that it had begun a "[t]emporary" deferral of natural gas production at Alpine High.  In response to this news,

Apache's stock price fell $4.03 per share, or nearly 11% over the next four trading days, from a close of $37.09 per share on April 22, 2019, to close at $33.06 per share on April 26, 2019.

5.      Then, on October 25, 2019, Apache's Senior Vice President of Worldwide Exploration, Steven Keenan, abruptly resigned from the Company.   In response to this announcement, Apache's stock price dropped $1.16 per share, or approximately 5%, from a close of $23.23 per share on October 24, 2019, to close at $22.07 per share on October 25, 2019. Apache's stock traded as low as $20.57 per share on October 25, 2019, an intra-day drop of approximately 11.5%, prompting *Bloomberg* to issue a story titled "Apache Executive's Departure Sparks Worst Rout Since 2016."

6.      A few months later, on February 26, 2020, after the close of the markets, Apache announced that it was completely de-valuing Alpine High after taking a $3 billion write down on the project.   Two weeks later, on March 12, 2020, Apache announced that it had slashed its quarterly dividend by 90% (from $0.25 per share to just $0.025 per share) and was significantly reducing planned capital expenditures for the rest of 2020.   On this news, the price of Apache common stock fell $0.49 per share, or approximately 6%, from a close of $8.25 per share on March 11, 2020, to close at $7.76 per share on March 12, 2020.

7.      A few days later, on March 16, 2020, *Seeking Alpha* published an article pre-market noting that Apache was particularly challenged amongst its peers, carrying "the highest debt-to-equity ratio among large-cap independent [exploration and production companies]," and that "[t]he company doesn't have a strong balance sheet" and its "financial health isn't great."   The article observed that low gas prices had "forced Apache to shift capital away from the wet-gas rich Alpine High play which has been driving the company's production growth."   The article noted that "Apache also reduced Alpine High's value by $1.4 billion."   In response to this news and other

investment research downgrades, Apache's stock price fell $3.61 per share, or approximately 45%, over two trading days, from a close of $8.07 per share on Friday, March 13, 2020, to close at $4.46 per share on March 17, 2020.

8.      As a result of Defendants' wrongful acts and omissions and the decline in the Company's share price, Plaintiff and other class members have suffered significant damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this Judicial District, as Apache is headquartered in this Judicial District.

12.     In connection with the acts, conduct, and other wrongs alleged herein, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including the U.S. mails, interstate telephone communications, and the facilities of a national securities market.

## PARTIES

13.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased Apache common stock during the Class Period, and suffered damages

as a result of the federal securities law violations and false and misleading statements and/or material omissions alleged herein.

14.     Defendant Apache is a Delaware corporation with principal executive offices located in Houston, Texas.  Apache's common stock trades on the NASDAQ exchange under the symbol "APA."

15.     Defendant John J. Christmann IV ("Christmann") served at all relevant times as the Company's Chief Executive Officer ("CEO") and President, and as a member of Apache's Board of Directors.

16.     Defendant Timothy J. Sullivan ("Sullivan") served as the Company's Executive Vice President, Operations Support from January 2016 to December 2019.

17.     Defendant Stephen J. Riney ("Riney") served at all relevant times as the Company's Executive Vice President and Chief Financial Officer.

18.     Defendant Steven Keenan ("Keenan") served as the Company's Senior Vice President of Worldwide Exploration during the Class Period until October 2019.

19.     Defendants Christmann, Sullivan, Riney, and Keenan (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the

public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

20.     The Company and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Apache is an independent energy company that explores for, develops, and produces natural gas, crude oil, and natural gas liquids.  The U.S. has historically represented nearly 60% of the Company's production and 70% of its estimated year-end proved reserves.  At all relevant times, one of the Company's purported key "core growth areas" in the U.S. was the Permian region, a large oil-and-gas producing area in West Texas and New Mexico.

22.     In the years leading up to the start of the Class Period, Apache's prior strategy of focusing on developing oil in established fields through acquisitions of properties and smaller oil companies was no longer working, and its productions began to stall.  The Company responded by implementing a new strategy of acquiring land and finding new oil discoveries, led by Defendant Christmann, as its new CEO, promoted from Chief Operating Officer in January 2015, and Defendant Keenan, as its Senior Vice President of Worldwide Exploration, hired by the Company in April 2014 because of his successful discoveries in the shale basin of Texas at his prior company. Notably, by January 2016, Apache had purchased over 300,000 acres in the Permian Basin.

**Materially False and Misleading Statements Issued During the Class Period**

23.     The Class Period begins on September 7, 2016, when Apache, while under immense pressure to show results from its new strategy and reverse its lagging share price, announced the discovery of a new resource play called Alpine High.

24.     Defendant Christmann touted the Alpine High discovery and its potential for large amounts of economic drilling opportunities stating at the time that "[w]e are incredibly excited about the Alpine High play and its large inventory of repeatable, high-value drilling opportunities," and that they are "looking forward to further delineat[e] what we believe will be a significant number of oil-prone locations."  Christmann called Alpine High "a giant onion that is going to take us years to unveil and peel back."  Investors reacted positively to the Alpine High announcement as Apache's stock price increased more than 6%, to close at $55.13 per share on September 7, 2016.

25.     In addition to the gas reserves, the Company also claimed that Alpine High had valuable oil reserves.  For example, on February 14, 2017, Defendant Christmann, speaking at the Credit Suisse Annual Energy Summit, expressed confidence that Apache had made a significant discovery that would pay off for years to come, representing that the small number of wells drilled so far had confirmed oil and gas in five geologic formations, each with multiple reservoirs. Christmann added that the reservoirs were "overpressured," as they would more easily produce oil and gas as the Company continued to exploit them.  Christmann also stated that the Company was "focused on long-term results, not short-term press release material."

26.     On May 4, 2017, the Company released new well results that showed improved oil production, as well as the early completion of a section of Apache's natural gas pipeline, allowing the Company to begin shipping its products from the area, two months ahead of schedule.  That

7

day, in the Company's press release announcing Apache's first-quarter 2017 financial results, Defendant Christmann stated that "[a]t Alpine High, testing and delineation have continued with strong results that reinforce our confidence in this world-class resource play."  In July 2017, Christmann addressed the effect on Apache of the then-current oil price of $44 a barrel, telling Barron's, "[w]e've spent two years repositioning Apache . . . . We have a very strong portfolio and are positioned to thrive in a sub-$50 [oil price] world."

27.     During an October 8, 2017 Special Conference Call, Defendant Sullivan stated that "[t]he weighted average typical Alpine High wet gas well is estimated to produce 13.3 [billion of cubic feet equivalent] of hydrocarbons, of which 6% is oil."  Sullivan noted that "[w]e have just scratched the surface in exploring this resource" and "[w]e are excited about what we have learned and the tremendous upside potential this play holds."

28.     On February 22, 2018, Defendant Christmann told analysts the property would "really hum" even with lower gas prices and stated that "Alpine High has all the makings of a great resource play, and Apache is fortunate to have such a commanding acreage position."  That same day, Apache issued a press release announcing its fourth-quarter and full-year 2017 financial results ("4Q 2017 Press Release").  The 4Q 2017 Press Release noted that, in the fourth-quarter, Permian oil volumes grew 10% from the previous quarter and total Permian production achieved a new record, exceeding the previous high set two years earlier.

29.     Despite these rosy sentiments, however, industry observers expressed skepticism about the viability of the Alpine High play.  For example, on April 19, 2018, the environmental research website DeSmog published an article titled, "Despite Disappointing Returns, Oil Driller Pushes Ahead with Fracking Near Rare Texas Wildlands."  The article reported that, "[a]lready, there are signs the wells may not live up to Apache's early hopes and pressure has been growing

from Wall Street to stop pouring money into huge infrastructure projects based on risky assumptions." These concerns, however, did nothing to temper the Company's promotion of Alpine High as the centerpiece of its development business.

30.     Shortly after the article was published, in the Company's May 2, 2018 press release announcing its first-quarter 2018 results, Defendant Christmann stated that "2018 will be a year in which Apache differentiates itself operationally, particularly in the Permian Basin." On the accompanying conference call with investors the next day, Defendant Sullivan called the Permian Basin "the primary driver of our growth," which reflected ongoing oil development as well as "the startup of Alpine High." Christmann asserted that Alpine High was "going very well and there's a tremendous amount of interest" and monetization opportunities when "the value of this infrastructure is going to grow significantly over the next 5, 6, 7, 8 years."

31.     Later that month, during the May 24, 2018 Apache Annual Shareholders Meeting, Defendant Christmann told investors that Alpine High had a "significant production ramp that's going to continue for many years" while the Company "made great progress on reducing our well costs."

32.     On August 1, 2018, Alpine issued a press release announcing its second-quarter 2018 financial results, which again displayed positive results from the Alpine High play. During the accompanying earnings conference call the next day, Defendant Christmann highlighted "another great quarter" as it exceeded guidance and raised the 2018 outlook. Christmann also pointed to the significant upside still coming, due to added capital, which would increase Apache's capital efficiency improvements and strong well performances in the Permian Basin for 2019 and 2020. Christmann reiterated the Company's earlier guidance, stating that "we anticipate that the

2019 production from Alpine High will trend towards the high end of the 85,000 to 100,000 barrels of oil equivalent per day guidance range that was established back in February [2018]."

33.     On October 31, 2018, Apache issued a press release announcing its third-quarter 2018 financial results and the positive results from Alpine High.  Defendant Christmann stated that "Apache continued our strong performance in the third quarter of 2018, delivering 31 percent growth in U.S. production year over year.  The Permian Basin continues to be the key driver, with oil production up 16 percent and total production up 38 percent year over year."  Notably, Apache raised its full-year 2018 U.S. production guidance to 262,000 barrels of oil equivalent per day.

34.     The statements identified in ¶¶ 23-33 above were materially false and misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors that: (i) Apache intentionally used unrealistic assumptions regarding the amount and composition of available oil and gas in Alpine High; (ii) Apache did not have the proper infrastructure in place to safely and/or economically drill and/or transport those resources even if they existed in the amounts purported; (iii) these misleading statements and omissions artificially inflated the value of the Company's operations in the Permian Basin; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

35.     The truth about Alpine High and its lack of viability emerged in a series of disclosures between April 2019 and March 2020 that caused Apache's stock price to decline over 83% from its Class Period high.

36.     On April 23, 2019, Apache issued a pre-market press release announcing that starting in late March it began deferring natural gas production at its gas-heavy Alpine High play

in order to positively impact the Company's cash flow, blaming extremely low gas pricing in the Permian gas market.  At the time of the press release, the deferrals represented 250 million cubic feet per day of gross gas production.  In an article published before markets opened, *Bloomberg* called the Alpine High production deferral "another blow to the Apache project."

37.     In response to this news, Apache's stock price fell $0.66 per share, from a close of $37.09 per share on April 22, 2019, to close at $36.43 per share on April 23, 2019.  This decline continued over the next three trading days, closing at $33.06 per share on April 26, 2019, for a four-day stock price decline of $4.03 per share, or nearly 11%.

38.     In the same press release announcing the production deferrals, the Company stood behind its prior plans for Alpine High.  Specifically, Apache stated that its expected exit rate from Alpine High would remain unchanged in 2019 and reiterated its planned rig count and well completions.

39.     The following month, the Company again maintained its fourth quarter and full-year 2019 guidance and downplayed long-term concerns over Alpine High's viability.  For example, on the Company's May 2, 2019 earnings call for the first quarter of 2019, held a week after the announced deferrals, Defendant Riney reassured investors that "[o]ur 2019 rig schedule and completions activity is not impacted by the deferrals.  As a result, we still expect that fourth quarter and year-end exit rates from Alpine High will exceed 100,000 [barrels of oil equivalent] per day."  Later that month, Company representatives told *Bloomberg* that "[i]nvestors do not yet have an appreciation for the potential cash flow generation from the liquids play at Alpine High" and "[w]e are here for the long haul."

40.     On October 25, 2019, news stories revealed that Defendant Keenan had resigned from Apache.  Analysts at Credit Suisse noted that Keenan "oversaw the discovery of the Alpine

High play, which has been an economic disappointment for investors" and that since announcing the Alpine High discovery at the start of the Class Period, "[Apache's] shares have underperformed global [exploration and production companies] by >30%, likely a cause for Mr. Keenan's resignation."

41.     In response to this news, Apache's stock price fell by $1.16 per share, or approximately 5%, from a close of $23.23 per share on October 24, 2019, to close at $22.07 per share on October 25, 2019, prompting *Bloomberg* to issue a story titled "Apache Executive's Departure Sparks Worst Rout Since 2016."

42.     As *The Wall Street Journal* later reported, by December 2019, "the value of the Apache's shares . . . had fallen roughly 35% in the last 12 months . . . as Apache slowed production in the Permian Basin of West Texas and New Mexico due to low natural-gas and natural-gas-liquids prices."

43.     Then on February 26, 2020, Apache announced that it was immediately discontinuing its Alpine High project and posting a $3 billion write down, confirming previous disclosures and persistent investor concern about its viability during the Class Period.  On the Company's fourth quarter earnings call held the next day, Defendant Christmann admitted, "[i]n the end, a number of factors were problematic at Alpine High," including steeply lower prices for gas and gas byproducts, the lack of infrastructure to handle output, and productivity improvements that "did not materialize."

44.     As operational challenges continued to mount, Apache announced on March 12, 2020, that, "to further strengthen its financial position," the Company's "board of directors has approved a reduction in the company's quarterly dividend per share from $0.25 to $0.025."  The Company further revealed that, "[o]ver the coming weeks, the company will reduce its Permian

rig count to zero, limiting exposure to short-cycle oil projects" in the Alpine High resource play. In response to these disclosures, the price of Apache common stock fell $0.49 per share, or approximately 6%, from a close of $8.25 per share on March 11, 2020, to close at $7.76 per share on March 12, 2020.

45.     Finally, on March 16, 2020, a *Seeking Alpha* article published pre-market explained that Apache was particularly challenged amongst its peers, carrying "the highest debt-to-equity ratio among large-cap independent [exploration and production companies]," and noted that "[t]he company doesn't have a strong balance sheet" and its "financial health isn't great."  The article emphasized the Company's "weak balance sheet marked by high levels of debt" of over $8 billion in 2019, "which translates into a lofty debt-to-equity ratio of almost 250% - the highest among all large-cap independent oil producers."  Regarding Alpine High, the article observed that low gas prices "forced Apache to shift capital away from the wet-gas rich Alpine High play which has been driving the company's production growth."  The article noted that "Apache also reduced Alpine High's value by $1.4 billion."

46.     That same day, Susquehanna Financial Group, LLLP downgraded Apache from positive to neutral, highlighting a lack of "balance sheet flexibility" and noting Apache's "net leverage exceeding 3.0x by the end of 2021," as well as the Company's "activity reduction" and the possibility of further cutbacks.

47.     In response to this news, Apache's stock price fell $3.61 per share over two trading days, or approximately 45%, from a close of $8.07 per share on March 13, 2020, to close at $4.46 per share on March 17, 2020.

## UNDISCLOSED ADVERSE FACTS

48.     The market for Apache's common stock was open, well-developed, and efficient at all relevant times.  As a result of these materially false and misleading statements, and/or failures to disclose, Apache's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Apache's common stock relying upon the integrity of the market price of the Company's common stock and market information about Apache and have been damaged thereby.

49.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Apache's common stock, by publicly issuing false and misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading.   The statements and omissions were materially false and misleading because they failed to disclose material adverse information and/or misrepresented the truth about Apache's business, operations, and prospects as alleged herein.

50.     At all relevant times, the material misrepresentations and omissions described in this Complaint directly or proximately caused or were a substantial contributing cause of the damages suffered by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and misleading statements about Apache's financial well-being and prospects.

51.     These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements made during the Class

Period resulted in Plaintiff and the other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

52.     During the Class Period, the Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Apache common stock and operated as a fraud or deceit on Class Period purchasers of Apache common stock.  Defendants failed to disclose to investors that the Company's public statements about Alpine High were materially misleading and misrepresented material information.  When the Defendants' misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the prices of Apache common stock fell precipitously as the artificial inflation came out of the Company's stock price. As a result of their purchases of Apache common stock during the Class Period, Plaintiff and the other Class members suffered economic loss.

53.     By failing to disclose the true state of the Company's business operations and financial prospects, including related to Alpine High, investors were unaware of the true state of the Company's business operations and financial prospects.  Instead of disclosing during the Class Period the true state of the Company's business, including related to Alpine High, Defendants concealed the truth from investors and presented a misleading picture of Apache's business operations and financial prospects.

54.     Defendants' false and misleading statements had the intended effect and caused Apache's common stock to trade at artificially inflated levels throughout the Class Period.  The stock price drops discussed herein caused real economic loss to investors who purchased the Company's common stock during the Class Period.

55.     The decline in the price of Apache's common stock after the truth emerged was a direct result of the nature and extent of the Defendants' fraud being revealed to investors and the market.  The timing and magnitude of the decline in Apache's common stock price negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to the Defendants' fraudulent conduct.  The economic loss suffered by Plaintiff and the other Class members was a direct result of the Defendants' fraudulent scheme to artificially inflate the prices of Apache's common stock and the subsequent decline in the value of Apache's common stock when the truth was revealed.

## SCIENTER ALLEGATIONS

56.     As alleged herein, Defendants acted with scienter since Defendants: (i) knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

57.     As alleged herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts about Apache, their control over, and/or receipt and/or modification of Apache's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information about Apache, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## <u>FRAUD-ON-THE-MARKET DOCTRINE</u>

58.    At all relevant times, the market for Apache's common stock was an efficient market for several reasons, including because:

a)    Apache shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

b)    As a regulated issuer, Apache filed periodic public reports with the SEC and/or the NASDAQ;

c)    Apache regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)    Apache was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

59.    For these reasons, the market for Apache's common stock promptly digested current information about Apache from all publicly available sources and reflected such information in Apache's share price.  Under these circumstances, all purchasers of Apache's common stock during the Class Period suffered similar injuries through their purchase of Apache's common stock at artificially inflated prices and a presumption of reliance applies.

60.     A Class-wide presumption of reliance is also appropriate under the Supreme Court's holding in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in substantial part, grounded on Defendants' material omissions.

## NO SAFE HARBOR

61.     The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  To the extent certain statements alleged to be false may be characterized as forward-looking, they were not identified as forward-looking statements when made, and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

62.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those statements because at the time each such statement was made, the speaker had actual knowledge that the forward-looking statement was materially false and misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Apache who knew that the statement was false when made.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

63.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons or entities that purchased or otherwise acquired Apache common stock during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at

18

all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

64.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Apache's common stock actively traded on the NASDAQ.  While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of shares of Apache common stock were publicly traded during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Apache or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

65.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

66.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

67.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Questions of law and fact common to the Class include:

       a)     whether the federal securities laws were violated by Defendants' acts and omissions as alleged herein;

       b)     whether Defendants participated in and pursued the common course of conduct complained of herein;

    c)      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders during the Class Period misrepresented material facts about the business, finances, and prospects of Apache;

    d)      whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, finances, value, performance, and prospects of Apache;

    e)      whether the market price of Apache common stock during the Class Period was artificially inflated due to the material misrepresentations and the failures to correct the material misrepresentations complained of herein; and

    f)      the extent to which the members of the Class have sustained damages and the proper measure of damages.

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Further, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

69.     The previous paragraphs are incorporated by reference.  This claim is asserted against all Defendants.

70.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public,

including Plaintiff and the other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Apache common stock; and (iii) cause Plaintiff and the other members of the Class to purchase Apache common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

71.     These Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Apache common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  The Defendants are sued as primary participants in this wrongful and illegal conduct.  The Individual Defendants are also sued as controlling persons of Apache.

72.     Defendants, individually and in concert, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, business practices, performance, operations, and future prospects of Apache as specified herein.  These Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Apache's value and performance and substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts, and omitting to state material facts necessary in order to make the statements made about Apache and its business, operations, and future prospects, in light of the circumstances under

which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Apache's common stock during the Class Period.

73.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive at the Company during the Class Period; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior executive officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's operational and financial projections and/or reports; (iii) the Individual Defendants enjoyed significant personal contact and familiarity with each other, and were advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's business operations and financial performance at all relevant times; and (iv) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

74.     These Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were readily available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly, and for the purpose and effect of concealing Apache's operating condition, business practices, and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by their overstatements and misstatements of the Company's financial condition and performance throughout the Class Period, the Individual Defendants, if

they did not have actual knowledge of the misrepresentations and omissions alleged, were severely reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false and misleading.

75.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Apache common stock was artificially inflated during the Class Period.  Unaware that the market price of Apache shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by the Defendants but not disclosed in public statements by these Defendants during the Class Period, Plaintiff and the other Class members acquired Apache common stock during the Class Period at artificially inflated high prices and were damaged thereby.

76.     At the time of these misrepresentations and omissions, Plaintiff and the other Class members were unaware of their falsity, and believed them to be true.  Had Plaintiff and the other Class members and the market known of the true performance, business practices, future prospects, and intrinsic value of Apache, which were not disclosed by the Defendants, Plaintiff and the other Class members would not have purchased or otherwise acquired Apache common stock during the Class Period, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

77.     For these reasons, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

78.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

79.     The previous paragraphs are incorporated by reference.

80.     The Individual Defendants were and acted as controlling persons of Apache within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the Company's actual performance, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of these statements or cause these statements to be corrected.

81.     Each of the Individual Defendants also had direct involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

82.     As set forth above, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint. By virtue of their controlling positions, the Individual Defendants are liable under Section 20(a)

of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other Class members suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 4, 2021

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
(S.D. Tex. Federal Bar Number 1466757)
J. Alexander Hood II
(S.D. Tex. Federal Bar Number 3086579)
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Fl.
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com

ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

Monday, March 1, 2021

## Apache (APA)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Apache Corporation ("Apache" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Apache securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Apache securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  The attached sheet lists all of my transactions in Apache securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Name**

**Print Name**
Brian Schwegel

**Signature**

1

**Apache Corporation (APA)**                                           **Schwegel, Brian**

## List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 2/20/2020 | 200 | $28.5180 |